UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— x

UA LOCAL 13 PENSION FUND, Individually :   Civil Action No.
and on Behalf of All Others Similarly Situated, :
                                      :   <u>CLASS ACTION</u>
                 Plaintiff, :
                                        :   COMPLAINT FOR VIOLATIONS OF THE
      vs.                              :   FEDERAL SECURITIES LAWS

BUMBLE INC., WHITNEY WOLFE HERD, :
ANURADHA B. SUBRAMANIAN, ANN :
MATHER, CHRISTINE L. ANDERSON, R. :
LYNN ATCHISON, SACHIN J. BAVISHI, :
MATTHEW S. BROMBERG, AMY M. :
GRIFFIN, JONATHAN C. KORNGOLD, :
JENNIFER B. MORGAN, ELISA A. :
STEELE, PAMELA A. THOMAS-GRAHAM, :
BLACKSTONE GROUP INC., GOLDMAN :
SACHS & CO. LLC, CITIGROUP GLOBAL :
MARKETS INC., MORGAN STANLEY & :
CO. LLC, J.P. MORGAN SECURITIES LLC :
and BLACKSTONE SECURITIES :
PARTNERS L.P., :
                                        :
               Defendants. :

——————————————————————— x   <u>DEMAND FOR JURY TRIAL</u>

Plaintiff UA Local 13 Pension Fund ("plaintiff") alleges the following based upon the investigation of plaintiff's counsel, which included a review of U.S. Securities and Exchange Commission ("SEC") filings by Bumble Inc. ("Bumble" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all purchasers of the Class A common stock of Bumble directly in Bumble's secondary public stock offering which took place on or about September 10, 2021 (the "SPO"), seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§77k, 77l(a)(2) and 77o. This Court has jurisdiction over this action pursuant to §22 of the Securities Act, 15 U.S.C. §77v, and 28 U.S.C. §1331.

3.      Venue is properly laid in this District pursuant to §22 of the Securities Act and 28 U.S.C. §1391(b) and (c). The acts and conduct complained of herein occurred in substantial part in this District as the co-lead book-running managers of Bumble's SPO maintain their principal places of business in this District where they acted as representatives of the other Underwriter Defendants (defined below) in the SPO, conducting the SPO in and from this District, and closing the SPO in this District.[1]

---

[1]      Furthermore, the Underwriting Agreement signed by Bumble and the Underwriter Defendants expressly provides:

4.      In connection with the acts alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

5.      Plaintiff UA Local 13 Pension Fund purchased Bumble Class A common stock directly in the SPO and was damaged thereby.

6.      Defendant Bumble operates online dating and social networking platforms in North America, Europe, and internationally. The Company was founded in 2014 and is headquartered in Austin, Texas. Bumble is controlled by investment advisory firm defendant Blackstone Group Inc. and its affiliates. At the time of the SPO, Bumble had two series of shares outstanding, its Class A common stock and its Common Units. Bumble's Class A common stock trades on the NASDAQ under the ticker symbol "BMBL." Bumble's Common Units are a class of units of Bumble Holdings held by certain pre-IPO (defined below) investors. The Class A common stockholders are entitled to one vote per share while the Common Unit holders are entitled to ten votes per unit.[2] The

---

The parties hereto agree that any suit or proceeding arising in respect of this Agreement or the Representatives' engagement will be tried exclusively in the U.S. District Court for the Southern District of New York . . . and the parties hereto agree to submit to the jurisdiction of, and to venue in, such court[], and waive, to the fullest extent they may effectively do so, any objection which they may now or hereafter have to the laying of venue of any such proceeding.

[2]      In addition, a Stockholders Agreement provides defendants Herd (defined below) and the affiliates of Blackstone (defined below), to which the agreement refers collectively to as Bumble's "Principal Stockholders," certain outsized voting rights entailing that until seven years from the closing of the IPO (or, if earlier, the date the parties to the stockholders agreement intend to enter into in connection with the IPO cease to own in the aggregate 7.5% of the outstanding shares of Class A common stock), each share of Class A common stock held by a Principal Stockholder will entitle such Principal Stockholder to ten votes and each Principal Stockholder that holds Class B common stock will be entitled, without regard to the number of shares of Class B common stock held by such Principal Stockholder, to a number of votes equal to ten times the aggregate number of Common Units (including Common Units issued upon conversion of vested Incentive Units) of Bumble Holdings held by such Principal Stockholder.

SPO offering documents expressly stated that "[i]mmediately following this offering, our Principal Stockholders will hold 93% of the voting power in Bumble Inc."

7.     Defendant Whitney Wolfe Herd ("Herd") was at the time of the SPO, the Founder, Chief Executive Officer and a director of Bumble.  Due to her beneficial stockholdings and the Shareholder Agreement, defendant Herd, along with defendant Blackstone, was a controlling shareholder of Bumble at the time of the SPO.

8.     Defendant Anuradha B. Subramanian ("Subramanian") was the Chief Financial Officer of Bumble at the time of the SPO.

9.     Defendants Ann Mather ("Chair"), Christine L. Anderson ("Anderson"), R. Lynn Atchison ("Atchison"), Sachin J. Bavishi ("Bavishi"), Matthew S. Bromberg ("Bromberg"), Amy M. Griffin ("Griffin"), Jonathan C. Korngold ("Korngold"), Jennifer B. Morgan ("Morgan"), Elisa A. Steele ("Steele") and Pamela A. Thomas-Graham ("Thomas-Graham") were directors of Bumble at the time of the SPO.

10.     The defendants named in ¶¶7-9 are referred to herein as the "Individual Defendants." The Individual Defendants each signed the Registration Statement.  The Individual Defendants also solicited investors for the SPO for their own financial benefit and the benefit of defendant Blackstone and its affiliates, Bumble's controlling shareholder.

11.     Defendant Blackstone Group Inc. ("Blackstone"), along with its affiliated investment funds, co-owned Bumble prior to its initial public stock offering in February 2021 (the "IPO"), served as sponsors of the Company in the IPO and remained controlling shareholders of Bumble with defendant Herd following the IPO.  In addition to their roles as members of the Bumble Board of Directors (the "Board"), several Individual Defendants were also employed by defendant Blackstone.  For example, at the time of the SPO, defendant Anderson was a senior managing

director and the global head of public affairs and marketing at Blackstone; defendant Bavishi was also a managing director in Blackstone's private equity group; and defendant Korngold was also a senior managing director and global head of Blackstone's Growth Equities Business. Pursuant to the Stockholders Agreement, defendant Blackstone is further entitled to designate a non-voting observer to attend meetings of Bumble's Board pursuant to the Stockholders Agreement. In this regard, Blackstone has appointed Martin Brand, a senior managing director and co-head of U.S. Acquisitions for Blackstone's Private Equity Group, to serve as the non-voting observer. At the time of the SPO, Blackstone and its affiliates continued to beneficially own 45.7% of Bumble's Class A common stock and 23.2% of Bumble's Common Units, providing Blackstone with more than 76% combined voting power over Bumble.

12.    Defendants Goldman Sachs & Co. LLC ("Goldman Sachs"), Citigroup Global Markets Inc. ("Citigroup"), Morgan Stanley & Co. LLC, J.P. Morgan Securities LLC and Blackstone Securities Partners L.P. ("Blackstone Securities Partners") are investment banking firms that acted as underwriters of Bumble's SPO, helping to draft and disseminate the offering documents (collectively, the "Underwriter Defendants"). Co-lead book-running managers of the SPO, Goldman Sachs and Citigroup, are both headquartered in this District and conducted the SPO out of their offices in this District as representatives of the other Underwriter Defendants. Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement as follows:

(a)    The Underwriter Defendants are investment banking houses that specialize in, *inter alia*, underwriting public offerings of securities. They served as the underwriters of the SPO

- 4 -

and shared more than $33.5 million in fees collectively.[3]  The Underwriter Defendants determined that in return for their share of the SPO proceeds, they were willing to merchandize Bumble stock in the SPO.  The Underwriter Defendants arranged a multi-city roadshow prior to the SPO during which they, and representatives from Bumble, met with potential investors and presented highly favorable information about the Company, its operations and its financial prospects;

(b)     The Underwriter Defendants also demanded and obtained an agreement from Bumble that Bumble would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws.  They also made certain that Bumble had purchased millions of dollars in directors' and officers' liability insurance;

(c)     Representatives of the Underwriter Defendants also assisted Bumble and the Individual Defendants in planning the SPO, and purportedly conducted an adequate and reasonable investigation into the business and operations of Bumble, an undertaking known as a "due diligence" investigation.  The due diligence investigation was required of the Underwriter Defendants in order to engage in the SPO.  During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning Bumble's operations and financial prospects;

(d)     In addition to availing themselves of virtually unbridled access to internal corporate documents, agents of the Underwriter Defendants met with Bumble's lawyers, management, and top executives and engaged in "drafting sessions."[4]  During these sessions, understandings were reached as to: (i) the strategy to best accomplish the SPO; (ii) the terms of the

---

[3]     Defendant Blackstone Securities Partners, an affiliate of defendant Blackstone, also underwrote 4.1 million of the 57.5 million shares of Class A common stock Bumble offered to the market in the IPO, receiving underwriting discounts and commissions of more than $7.9 million.

[4]     Underwriter Defendants Goldman Sachs and Citigroup also served as co-lead managing underwriters in the IPO, and most of the Underwriter Defendants were also underwriters of the IPO.

SPO, including the price at which Bumble stock would be sold; (iii) the language to be used in the Registration Statement; (iv) what disclosures about Bumble would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Bumble management and top executives, the Underwriter Defendants knew, or should have known, of Bumble's existing problems as detailed herein; and

(e)   The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with offers and sales thereof, including to plaintiff and the Class (defined below).

## SUBSTANTIVE ALLEGATIONS

13.   Defendant Bumble is an operator of two online dating platforms: (i) the Bumble app; and (ii) the Badoo app. The Bumble app, launched in 2014, is unique among dating apps because it requires women to make the first move by reaching out to men. Bumble is a popular dating app in the United States, the United Kingdom, Australia and Canada. The Badoo app, launched in 2006, is popular in Europe and Latin America and is available in 73 countries as of July 31, 2021. Bumble also offers two types of memberships, free and "Premium." While all members have access to certain aspects of both of the dating apps, Premium members pay subscription fees and additional fees for certain "Premium Services" that purportedly enhance members' experience on the apps. Selling Premium memberships to "paying users" is how Bumble monetizes its apps. Because Bumble is not currently profitable, it is critically important to investors that Bumble continue to grow its paying user base so that the Company can eventually become profitable.

14.   In February 2021, defendant Blackstone took Bumble public through an IPO in which the Company raised more than $2.4 billion from investors in gross offering proceeds.

15.     Following its IPO, Bumble claimed that it was experiencing significant growth in its paying user count, announcing that it had had increased 32% year-over-year to 2.69 million by the end of the fourth quarter of fiscal 2020 (ended December 31, 2020), 30% year-over-year to 2.80 million by the end of the first quarter of 2021 ("1Q21") (ended March 31, 2021), and by another 20% year-over-year to 2.93 million by the end of the second quarter 2021 ("2Q21") (ended June 30, 2021).  As of June 30, 2021, Bumble reported having 42 million "average monthly users," 2.93 million of which were the all-important "paying users" (1.47 million on the Bumble app and 1.45 million on the Badoo app).  In the first and second quarter of 2021, Bumble added over 100,000 paying users each quarter.

16.     However, unbeknownst to investors, during the third quarter of 2021 ("3Q21"), ending September 30, 2021, the Company's previous favorable paying user growth trend had abruptly reversed.  During the quarter, Bumble had actually lost *over 60,000 paying users* between its two apps.  Specifically, the paying user growth the Bumble app had been experiencing tapered off dramatically – growing only from 1.47 million paying users to 1.53 million paying users – and the number of paying users on the Badoo app actually *declined* from 1.45 million paying users to 1.33 million paying users.

17.     Furthermore, the reasons for the declines were directly related to actions taken by Bumble.  Specifically, Bumble had increased pricing too much on the Bumble app during 3Q21, diminishing the number of paying using willing to sign up for the app.  As to the Badoo app, during the quarter there was a temporary disabling of third-party payment options on Android by Bumble as it prepared to move payments to its platform, materially impacting the Company's paying user growth and revenue collection.  Demonstrating that these were Company-specific problems,

Bumble's biggest competitor, Match.com, reported paid user growth during 3Q21, reporting its highest-ever net additions and growing its paying user base by 1.3 million paying users.

18.     Despite these adverse facts, on or about September 10, 2021, just days before the end of its 3Q21, Bumble undertook another registered public stock offering without disclosing the problems plaguing its dating apps or the abrupt slowdown in the Company's paying user growth. However, in the SPO, unlike the IPO, Bumble did not raise any capital or sell any shares. Instead, the SPO allowed controlling shareholder defendant Blackstone to sell 20.7 million shares of Bumble Class A common stock at $54 per share, generating more than $1.1 billion in gross proceeds.

19.     On or about September 7, 2021, Bumble filed with the SEC a Registration Statement on Form S-1 for the SPO. On September 9, 2021, the SEC declared the Registration Statement effective, and on or about September 13, 2021, Bumble filed the final Prospectus for the SPO, which forms part of the Registration Statement (collectively, the "Registration Statement").

20.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading and was not prepared in accordance with the rules and regulations governing its preparation.

21.     Specifically, the Registration Statement claimed that the Bumble app was "a leader in the online dating sector across several countries" with "approximately 1.4 million Bumble App Paying Users during the six months ended June 30, 2021." The Registration Statement also claimed that the Badoo app "continues to be a market leader" and "had approximately 1.5 million Badoo App and Other Paying Users during the six months ended June 30, 2021," stating in pertinent part as follows:

- The Bumble app, launched in 2014, is one of the first dating apps built with women at the center. On Bumble, women make the first move. ***Bumble is a***

*leader in the online dating sector across several countries, including the United States, United Kingdom, Australia and Canada.  We believe that because women feel more confident and empowered on our platform, they are more engaged than on other dating apps*.  As a result, we believe that Bumble has one of the highest percentages of women Paying Users among dating apps.  According to OC&C Strategy Consultants LLP, UK ("OC&C"), within the North America freemium market, Bumble has approximately 30% more female users for every male user compared to the gender mix of users in the market who do not use Bumble.  *Additionally, according to OC&C, a higher percentage of Bumble's female users convert to payers than the market average.  We had approximately 1.4 million Bumble App Paying Users during the six months ended June 30, 2021*.

- The Badoo app, founded by Andrey Andreev and launched in 2006, was one of the pioneers of web and mobile free-to-use dating products.  Badoo's mantra of "Date Honestly" extends our focus on building meaningful connections to everyone.  *Badoo continues to be a market leader* in Europe and Latin America and is diversified across geographies as a top three grossing iOS lifestyle app in 73 countries as of July 31, 2021.  *We had approximately 1.5 million Badoo App and Other Paying Users during the six months ended June 30, 2021*.

22.     The Registration Statement also emphasized how Bumble's "total paying users" had been materially growing leading up to the SPO.  For example, the Registration Statement stated that Bumble had 0.574 million paying users as of December 31, 2018, which had grown to 0.856 million paying users as of December 31, 2019, and then to 1.14 million users as of December 31, 2020, and to 1.41 million paying users as of June 30, 2021.  The Registration Statement also stated that Bumble's individual paying user count for its Badoo app had grown from 1.13 million paying users as of December 31, 2018, to 1.19 million paying users as of December 31, 2019, and then to 1.36 million paying users as of December 31, 2020, and to 1.45 million paying users as of June 30, 2021.

23.     Concerning the Company's purported ongoing paying user growth trajectory, the Registration Statement stated that Bumble was a "large, growing and engaged community," stating in pertinent part as follows:

- A Large, Growing, Engaged Community.  We have created *a large, growing and engaged community* with approximately 2.9 million average Total Paying Users as of June 30, 2021, *up 24.9% from June 30, 2020.  The sheer*

*scale of our platform creates powerful network effects, with more users on the platform improving selection, which improves user experience and drives even more users to our platform*.

24.     Concerning Bumble's "Growth Strategies," the Registration Statement highlighted the Company's "*Increasing Monetization*" of its online dating apps, noting that while Bumble was "still early in [its] monetization journey," Bumble then "*expect[ed] to increase paying users* and average revenue per paying user over time."

25.     The statements referenced above in ¶¶21-24 were inaccurate statements of material fact because they failed to disclose the following material facts which existed at the time of the IPO:

(a)     that Bumble's paying user growth trends had abruptly reversed in 3Q21 and the Company had actually lost tens of thousands of paying users during the quarter;

(b)     that paying users had been more reluctant to sign up for the Bumble app during 3Q21 because of the recent price hike for paid services on the app;

(c)     that a material number of paying users were leaving the Badoo app and/or could not make payments through the Badoo app due, in substantial part, to problems arising from the Company's transition of its payment platform; and

(d)     as a result of the foregoing, Bumble's business metrics and financial prospects were not as strong as the Registration Statement had represented.

26.     Under the rules and regulations governing the preparation of the Registration Statement, defendants were required to disclose the problems plaguing the Company's Bumble app and Badoo app and the resulting adverse impacts to the Company's paying user base.  The Registration Statement, however, contained no such disclosures.  Pursuant to Item 303 of Regulation S-K, 17 C.F.R. §229.303, and the SEC's related interpretive releases thereto, issuers are required to disclose events or uncertainties, including any "known trends," that have had or are reasonably likely to cause the registrant's financial information not to be indicative of future operating results.  At the

time of the SPO, growth in Bumble's overall paying user count had declined significantly during 3Q21. The adverse events and uncertainties associated with these declining trends were reasonably likely to have a material impact on Bumble' profitability, and, therefore, were required to be disclosed in the Registration Statement.

27.     The SPO was successfully completed by defendants, enabling Blackstone to sell 20.7 million shares of Blackstone's Bumble Class A common stock to the public at $54 per share, generating more than $1.1 billion in gross proceeds.

28.     On November 10, 2021, Bumble announced its 3Q21 financial results. The Company disclosed that, rather than growing paying users, the Company's total paying user count had actually *declined* to 2.86 million, well below the Company's 2.9 million reported paying users as of June 30, 2021 as highlighted in the Registration Statement.

29.     Subsequent to the SPO, the price of Bumble Class A common stock declined substantially. By January 24, 2022, Bumble Class A common stock traded below $27 per share, a decline of more than 50% from the SPO price.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action as a class action on behalf of a class consisting of all those who purchased Bumble Class A common stock directly in the SPO (the "Class"). Excluded from the Class are defendants and their families, the officers and directors and affiliates of defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

31.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified

from records maintained by Bumble or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

32.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

33.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

34.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether defendants violated the Securities Act;

(b)     whether the Registration Statement was negligently prepared and contained inaccurate statements of material fact and omitted material information required to be stated therein; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

35.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**COUNT I**

**For Violation of §11 of the Securities Act**
**Against All Defendants**

36.     Plaintiff repeats and realleges each and every allegation set forth above.

37.     This Count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class against all defendants.

38.     The Registration Statement for the SPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

39.     Defendant Bumble is strictly liable to plaintiff and the Class for the misstatements and omissions.

40.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

41.     By reason of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, §11 of the Securities Act.

42.     Plaintiff acquired Bumble common stock pursuant to the SPO.

43.     Plaintiff and the Class have sustained damages.  The value of Bumble common stock has declined substantially subsequent to and due to defendants' violations.

44.     At the time of their purchases of Bumble common stock, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.  Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that plaintiff commenced this action.  Less than three

years has elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff commenced this action.

## COUNT II

### For Violation of §12(a)(2) of the Securities Act
### Against the Individual Defendants, Blackstone and the
### Underwriter Defendants

45.    Plaintiff repeats and realleges each and every allegation set forth above.

46.    This Count is brought pursuant to §12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2), on behalf of the Class against the Individual Defendants, Blackstone and the Underwriter Defendants.

47.    The defendants named herein were the sellers and offerors and/or solicitors of purchasers of the common stock offered pursuant to the Prospectus.

48.    As set forth above, the Prospectus contained untrue statements of material fact, omitted to state other facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.  Defendants' actions of solicitation included preparing the inaccurate and misleading Prospectus and participating in efforts to market the IPO to investors.

49.    Defendants owed to the purchasers of Bumble common stock, including plaintiff and the other Class members, the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were accurate and that they did not contain any misstatement or omission of material fact.  Defendants, in the exercise of reasonable care, should have known that the Prospectus contained misstatements and omissions of material fact.

50.    Plaintiff and the other members of the Class purchased or otherwise acquired Bumble common stock pursuant to the Prospectus, and neither plaintiff nor the other Class members knew, or

in the exercise of reasonable diligence could have known, of the untruths, inaccuracies and omissions contained in the Prospectus.

51.     Plaintiff, individually and on behalf of the Class, hereby offer to tender to defendants those shares of common stock that plaintiff and the other Class members continue to own, in return for the consideration paid for those shares together with interest thereon.  Class members who have sold their shares are entitled to rescissory damages.

## COUNT III

### For Violation of §15 of the Securities Act
### Against Defendants Bumble, Blackstone and the Individual Defendants

52.     Plaintiff repeats and realleges each and every allegation set forth above.

53.     This Count is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o, on behalf of the Class against the Company, Blackstone and the Individual Defendants.

54.     The Individual Defendants each were control persons of Bumble by virtue of their positions as directors and/or senior officers of Bumble.  The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Bumble.  The Company controlled the Individual Defendants and all of Bumble's employees.  Blackstone controlled Bumble due to its beneficial stock ownership, the terms of the Stockholders Agreement, and Blackstone's control over certain Board members and observers.  Blackstone also served as an underwriter of the SPO.

55.     Defendants Bumble, Blackstone and the Individual Defendants each were culpable participants in the violations of §§11 and 12(a)(2) of the Securities Act alleged in the Counts above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the SPO to be successfully completed.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.      Awarding rescission or a rescissory measure of damages; and

E.      Such equitable/injunctive or other relief as deemed appropriate by the Court.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

DATED: January 24, 2022              ROBBINS GELLER RUDMAN
                                       & DOWD LLP
                                     SAMUEL H. RUDMAN
                                     MARY K. BLASY


                                         *s/ Samuel H. Rudman*
                                     SAMUEL H. RUDMAN

                                     58 South Service Road, Suite 200
                                     Melville, NY  11747
                                     Telephone:  631/367-7100
                                     631/367-1173 (fax)
                                     srudman@rgrdlaw.com
                                     mblasy@rgrdlaw.com

- 16 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
BRIAN E. COCHRAN
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone:  312/674-4674
312/674-4676 (fax)
bcochran@rgrdlaw.com

ASHERKELLY
MICHAEL J. ASHER
JACQUELINE A. KELLY
25800 Northwestern Highway, Suite 1100
Southfield, MI  48075
Telephone:  248/746-2710
248/747-2809 (fax)
masher@asherkellylaw.com
jkelly@asherkellylaw.com

Attorneys for Plaintiff

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

UA LOCAL 13 PENSION FUND ("Plaintiff") declares:

1.      Plaintiff has reviewed a complaint and authorized its filing.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:  *See* attached Schedule A.

5.      Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

*UA Local 13 and Employers Group Insurance Fund v. Sealed Air Corporation*, No. 1:19-cv-10161 (S.D.N.Y.)
*In re Splunk Inc. Sec. Litig.*, No. 4:20-cv-08600 (N.D. Cal.)

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _24_ day of January, 2022.

UA LOCAL 13 PENSION FUND

By

Steven Ostrander, Fund Manager

BUMBLE

SCHEDULE A

SECURITIES TRANSACTIONS

**Stock**

| Date Acquired | Amount of Shares Acquired | Price |
|---|---|---|
| 09/10/2021 | 4,400 | $54.00 |

| Date Disposed | Amount of Shares Disposed | Price |
|---|---|---|
| 10/27/2021 | 120 | $54.95 |
| 12/06/2021 | 210 | $32.25 |

Prices listed are rounded to two decimal places.